UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DAYNA RUSSO,

                    Plaintiff,

            v.

PATCHOGUE-MEDFORD SCHOOL
DISTRICT,

                    Defendant.

**MEMORANDUM & ORDER**
22-CV-01569 (HG) (SIL)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff is an employee of Defendant Patchogue-Medford School District, which was subject to a New York State Department of Health requirement mandating it to implement periodic COVID-19 testing.  As an alternative to testing, school personnel could provide proof that they had received a COVID-19 vaccine.  After Defendant implemented the state's test-or-vaccination requirement, Plaintiff sought several different religious accommodations, which Defendant denied, and Defendant placed her on unpaid leave until the state's requirement expired.  Plaintiff asserts that Defendant's denial of her requests for accommodation violated Title VII of the Civil Rights Act and that certain information that Defendant asked about Plaintiff and her family when assessing her proposed accommodations violated the Genetic Information Nondiscrimination Act ("GINA").

Defendant has moved for summary judgment dismissing Plaintiff's claims in full.  ECF No. 19 (Defendant's Motion for Summary Judgment).  The Court grants Defendant's motion and dismisses Plaintiff's complaint because, as further set forth below, no reasonable jury could:
(i) reject Defendant's defense that Plaintiff's proposed accommodations would impose an undue

hardship on Defendant, or (ii) find that the information Defendant requested from Plaintiff fell within the scope of information protected by GINA.

## **FACTUAL BACKGROUND**

Plaintiff is a school psychologist employed by Defendant Patchogue-Medford School District.  ECF No. 22 at 37 (Plaintiff's Opposition to Defendant's Motion for Summary Judgment).  She received a probationary appointment to that position in advance of the 2018–2019 school year and received tenure effective August 29, 2021.  *Id.* at 37–39.  Plaintiff's job responsibilities included:  (i) performing "behavioral," "psychological," and "educational" assessments of students; (ii) participating in one-on-one and group counseling sessions with students; and (iii) "conducting non-violent crisis intervention."  ECF No. 19-7 at 2 (Exhibit E to Defendant's Motion for Summary Judgment).

On September 2, 2021, the New York State Department of Health issued a determination, pursuant to delegated authority, requiring both public and non-public schools that served students between pre-kindergarten and the twelfth grade to implement weekly COVID-19 testing.  ECF No. 19-3 (Exhibit A to Defendant's Motion for Summary Judgment).  That determination also allowed school personnel to opt out of testing by providing proof that they had received a COVID-19 vaccine.  *Id.*  Plaintiff was unwilling to do either based on her religious belief that receiving medical intervention would amount to an abandonment of her faith in God's protection and ability to keep her healthy.  ECF No. 22 at 30–35.  Plaintiff considers both COVID-19 vaccines and tests to be medical interventions.  *Id.*  Plaintiff also opposed receiving certain types of COVID-19 vaccines for the additional reason that they were allegedly tested or produced using fetal cells that were derived from an aborted human fetus.  *Id.* at 32.

Plaintiff asked one of Defendant's Assistant Superintendents by email for a religious exemption from the state's test-or-vaccination requirement.  ECF No. 19-4 (Exhibit B to

2

Defendant's Motion for Summary Judgment).  He responded by informing Plaintiff that the requirement did not authorize religious exemptions.  *Id.*  Approximately two weeks after that email exchange, the Assistant Superintendent met twice with Plaintiff, another Assistant Superintendent, and a representative from Plaintiff's union to discuss Plaintiff's request for an exemption.  ECF Nos. 19-5 & 19-6 (Exhibits C and D to Defendant's Motion for Summary Judgment).  During the first meeting, Defendant offered Plaintiff an accommodation of receiving a saliva-based test, rather than the nasal swab that it was using for other employees.  ECF No. 19-6 at 2.

Plaintiff also provided Defendant with a letter describing in greater detail her religious objections to receiving COVID-19 vaccines or tests.  ECF No. 22 at 30–35.  In that letter, Plaintiff requested, as an alternative accommodation, that she be permitted to work in-person while completing periodic health questionnaires, as Defendant's employees had previously done when working in-person before the state implemented its test-or-vaccination requirement.  *Id.* at 34.  During Plaintiff's second meeting, one of the Assistant Superintendents asked Plaintiff whether she or her child had previously received vaccines, about her views on certain medical procedures, and whether Plaintiff's child attended periodic doctor's appointments.  ECF No. 1 at 14, 31–32 (Complaint); ECF No. 19-6 at 2.  Plaintiff claims that, by requesting this information, the district violated GINA.  ECF No. 1 at 14.

After the second meeting, one of Defendant's Assistant Superintendents sent Plaintiff a letter denying Plaintiff's request for an accommodation.  ECF No. 19-6.  Defendant explained that exempting Plaintiff from the state's test-or-vaccination requirement, including by permitting Plaintiff to work in-person while completing health questionnaires, would impose an undue hardship on Defendant because it would bring Defendant out of compliance with state law.  *Id.* at

2–3.  Defendant further stated that exempting Plaintiff from the state's requirement would increase the risk of COVID-19 transmission among students and school personnel.  *Id.*

Plaintiff responded to Defendant's denial of her requested accommodations by writing a letter to Defendant's Superintendent.  ECF No. 22 at 66–69.  In that letter, Plaintiff proposed as yet another potential accommodation that she be permitted to work remotely and that Defendant limit her job responsibilities to tasks that could be performed remotely.  *Id.* at 67–68.  Plaintiff noted that she had performed some of her work remotely at various points during the COVID-19 pandemic and that her role as the chairperson of the district's special education committee was still being performed remotely.  *Id.*  The Superintendent responded to Plaintiff's request by confirming that Defendant was denying Plaintiff's prior requests for accommodations and also denying her proposed accommodation of remote work.  ECF No. 19-7.  The Superintendent explained that allowing Plaintiff to work remotely would impose an undue hardship on Defendant because Plaintiff's physical presence was necessary to perform essential functions of her job.  *Id.* at 2.

Defendant ultimately placed Plaintiff on an unpaid leave of absence, starting on October 12, 2021, and continuing for the remainder of the 2021–2022 school year, or until the state's test-or-vaccination requirement expired, whichever was earlier.  ECF No. 22 at 59, 61–62.  Since that requirement did expire at the end of the school year, Defendant ended Plaintiff's leave status, effective July 1, 2022, and she resumed performing her duties with pay.  *Id.* at 64.  Defendant hired a temporary replacement to cover Plaintiff's position and paid that employee a pro-rated annual salary of $68,030.  ECF No. 19-8 at 11 (Exhibit F to Defendant's Motion for Summary Judgment).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights, alleging that

4

Defendant discriminated against her because of her religion.  ECF No. 1 at 48–51.  Plaintiff did not check the box on that form indicating that she was asserting a claim for discrimination based on "genetic information."  *Id.* at 48.  However, Plaintiff's description of Defendant's allegedly discriminatory conduct included the fact that Defendant asked questions about Plaintiff's and her child's medical history when assessing her request for a religious exemption.  *Id.* at 49.  The EEOC sent Plaintiff a right-to-sue letter on December 27, 2021, which explained that Plaintiff must commence any lawsuit within 90 days.  *Id.* at 52.  Plaintiff filed this lawsuit on March 22, 2022, thereby complying with the 90-day time limit.  *Id.* at 1.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In other words, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).[1]  The moving party has the burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

---

[1]     Unless noted, case law quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

When deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995). Additionally, "it is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants, particularly where motions for summary judgment are concerned." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). This means that the Court must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Id.* at 56. However, although "courts must refrain from assessing competing evidence in the summary judgment record and avoid making credibility judgments," even a *pro se* plaintiff must defeat summary judgment by putting forth "evidence on which the jury could *reasonably* find for the non-moving party." *Saeli v. Chautauqua Cty.*, 36 F.4th 445, 456 (2d Cir. 2022) (emphasis in original) (affirming summary judgment dismissing claims brought by *pro se* plaintiff).

In response to Defendant's summary judgment motion, Plaintiff submitted her own statement of material facts as an attempt to comply with Local Civil Rule 56.1, but she did not submit a response to Defendant's statement of material facts. The Court is therefore "entitled to deem these facts as admitted." *Moore v. Am. Fed. of State, Cty. & Mun. Emps. Loc. 1095*, No. 22-1123-cv, 2023 WL 4145004, at *2 (2d Cir. June 23, 2023) (affirming summary judgment dismissing plaintiff's claims). Nevertheless, out of deference to Plaintiff's *pro se* status, the Court has reviewed both parties' papers in full, independently confirmed that Defendant's statements of fact are supported by the exhibits that Defendant submitted, and considered the additional exhibits that Plaintiff submitted in opposition to Defendant's motion. The factual description in the prior section of this decision incorporates information from both parties' exhibits.

6

## DISCUSSION

The Court grants Defendant's motion for summary judgment in full and dismisses all of Plaintiff's claims. Defendant has met its burden of showing that Plaintiff's proposed religious accommodations would impose an undue hardship on Defendant, so Title VII did not require Defendant to provide those accommodations. Plaintiff has failed to meet her burden of showing that Defendant requested information covered by GINA. Additionally, the Court has liberally construed Plaintiff's papers to assert a claim that Defendant violated certain provisions of New York's Education Law designed to protect tenured employees by placing her on leave without pay. The Court declines to exercise supplemental jurisdiction over that claim, and Plaintiff remains free to pursue it in state court to the extent the claim is valid and timely.

## I.      Plaintiff's Proposed Title VII Accommodations Would Impose an Undue Burden on Defendant

Plaintiff's religious discrimination claim fails. States are permitted to require school personnel to obtain vaccines without offering a religious exemption, as New York State did here. *See We the Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 156 (2d Cir. 2023) (holding that Connecticut's repeal of religious exemptions from school vaccination requirements for students did not violate First Amendment's Free Exercise Clause). The state's test-or-vaccination requirement was a neutral law of general applicability that only incidentally affected employees with religious objections and did not "target[] religious conduct for distinctive treatment." *Id.* at 144–45 (reaching same conclusions regarding Connecticut vaccination policy for schoolchildren). The requirement is, therefore, constitutionally permissible if it survives rational basis review, "which requires that the State have chosen a means for addressing a legitimate goal that is rationally related to achieving that goal." *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 290 (2d Cir. 2021). The state's requirement clearly

satisfies this standard because, regardless of whatever factual disputes may exist about the magnitude of the harm posed by COVID-19 and the efficacy of COVID-19 vaccines, requiring COVID-19 tests and vaccines for school personnel was "a reasonable exercise of the State's power to enact rules to protect the public health." *Id.* (upholding constitutionality of New York regulation requiring healthcare personnel to receive COVID-19 vaccine with no testing alternative); *Kane v. De Blasio*, 19 F.4th 152, 166 (2d Cir. 2021) (upholding constitutionality of New York City regulation requiring COVID-19 vaccines for school personnel with no testing alternative).

Since New York's test-or-vaccination requirement for school personnel was a constitutional, non-discriminatory law, Defendant's enforcement of the requirement was not an act of religious discrimination against Plaintiff. *See Moore v. Montefiore Med. Ctr.*, No. 22-cv-10242, 2023 WL 7280476, at *7 (S.D.N.Y. Nov. 3, 2023) (dismissing Title VII religious discrimination claim based on employer's enforcement of New York's vaccine requirement for healthcare personnel). Additionally, to the extent Plaintiff is asserting a retaliation claim, it fails because her own allegations and the evidence presented by the parties show that Plaintiff was placed on leave without pay because she refused to receive COVID-19 tests or a vaccination— not because of Defendant's alleged animus towards her religious beliefs. *See Adams v. New York State Unified Ct. Sys.*, No. 22-cv-9739, 2023 WL 5003593, at *4 (S.D.N.Y. Aug. 4, 2023) (dismissing retaliation claim because plaintiff's "own allegations establish[ed] that her religious exemption application was not a but-for cause of her termination" and that "that the cause was her non-compliance with the vaccine mandate"); *Moore*, 2023 WL 7280476, at *7 (dismissing retaliation claim and holding that plaintiff "was terminated because she did not receive the Vaccine—not because she submitted the Religious Exemption Request Form").

Plaintiff's claim that she was unlawfully denied a religious accommodation also fails. "To succeed on a religious accommodation claim, plaintiffs must first establish a *prima facie* case by showing that (1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement.  Once a prima facie case is established by the employee, the employer must offer him or her a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship."  *Hale v. Vidal*, No. 22-2973-cv, 2023 WL 7211909, at *2 (2d Cir. Nov. 2, 2023) (affirming summary judgment dismissing religious accommodation claim).  The Supreme Court has recently clarified that a proposed accommodation represents an undue hardship when it poses "a burden [that] is substantial in the overall context of an employer's business."  *Groff v. DeJoy*, 600 U.S. 447, 468 (2023).  "[A] reasonable accommodation can never involve the elimination of an essential function of a job," and "a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position."  *Tafolla v. Heilig*, 80 F.4th 111, 119 (2d Cir. 2023) (addressing reasonable accommodations in connection with ADA claim).  Additionally, "[e]mployees are not entitled to hold out for the most beneficial accommodation or a preferred accommodation."  *Hale*, 2023 WL 7211909, at *2.

Plaintiff was not entitled to an accommodation that would allow her to work in-person without receiving COVID-19 tests or a vaccine, even if she completed health questionnaires.  A proposed accommodation becomes an undue hardship for an employer if it would cause the employer to violate the law.  *See Bey v. City of New York*, 999 F.3d 157, 170 (2d Cir. 2021) (affirming summary judgment dismissing accommodation claim because "Title VII cannot be used to require employers to depart from binding federal regulations"); *Lowman v. NVI LLC*, 821 F. App'x 29, 32 (2d Cir. 2020) (affirming dismissal of Title VII religious discrimination claim

because employer's "policy [wa]s mandated by federal law" and employer, therefore, could not "depart from the policy to accommodate [plaintiff] without suffering an undue hardship").

New York enacted a similar regulation to the COVID-19 test-or-vaccination requirement applicable to Plaintiff and school personnel that required certain healthcare workers to receive the COVID-19 vaccine—without allowing healthcare workers an option to take COVID-19 tests instead. *See Hochul*, 17 F.4th at 292 (describing regulation applicable to healthcare workers). As with the requirement for school personnel, the regulation for healthcare workers did not authorize a religious exemption. *Id.* The Second Circuit has confirmed the validity of that regulation and held that healthcare employers were not required to provide employees with religious accommodations that would exempt the employees from the state's vaccination requirement because doing so would cause the employers an undue hardship by bringing them out of compliance with state law. *Id.* (reversing preliminary injunction in favor of plaintiffs on Title VII claims); *D'Cunha v. Northwell Health Sys.*, No. 23-476-cv, 2023 WL 7986441, at *3 (2d Cir. Nov. 17, 2023) (affirming dismissal of plaintiff healthcare worker's Title VII claims because "[d]efendant could not have granted her religious-exemption request without violating the State Mandate, exposing itself to potential penalties, and thereby suffering an undue hardship"). Because of this binding precedent, "[a] long line of cases in the Southern and Eastern Districts of New York" "have uniformly rejected claims that an employer is required by Title VII to accommodate a request for a religious exemption from the [healthcare] Mandate at the cost of violating . . . New York law." *Cagle v. Weill Cornell Med.*, No. 22-cv-6951, 2023 WL 4296119, at *4 (S.D.N.Y. June 30, 2023) (granting motion to dismiss Title VII religious accommodation claim). Although Plaintiff is challenging a different New York requirement, her claim fails for the same reason because Defendant could not permit her to perform in-person work without receiving COVID-19 tests or a vaccine while still complying with state law.

10

Plaintiff's request for a total exemption from the test-or-vaccination requirement would have, therefore, imposed an undue hardship on Defendant.

Defendant's rejection of Plaintiff's proposed accommodation of working remotely also did not violate Title VII. Plaintiff asserts that she performed some aspects of her job remotely earlier in the COVID-19 pandemic, but her proposal that she be permitted to work remotely going forward included a request that Defendant cut back on her job responsibilities to accommodate remote work. ECF No. 22 at 67–68. Plaintiff, therefore, implicitly conceded that her proposed accommodation would "involve the elimination of an essential function of [her] job," thereby rendering the proposal unreasonable. *See Tafolla*, 80 F.4th at 119. Since Plaintiff's job responsibilities included tasks such as "non-violent crisis intervention," *see* ECF No. 19-7 at 2, Defendant appropriately concluded that once students had returned to in-person learning, Plaintiff's job also needed to be performed by someone working in-person. *See Frantti v. New York*, 850 F. App'x 17, 20 (2d Cir. 2021) (holding that defendant was not required to permit plaintiff asserting ADA claim to work remotely because plaintiff's job responsibilities included work on "complex, collaborative projects" that required him to be "in the office and available on a consistent basis"). Allowing Plaintiff to work remotely while delegating her in-person responsibilities to other employees would also have caused Defendant an undue hardship, as shown by the fact that Defendant hired a temporary employee to cover Plaintiff's job and paid that employee a salary of more than $68,000. ECF No. 19-8 at 11. Plaintiff has offered no evidence to rebut the fact that incurring that additional cost was "substantial in the overall context of [Defendant's] business." *Groff*, 600 U.S. at 468; *see Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 124 (S.D.N.Y. 2022) (granting summary judgment dismissing ADA claim and holding that plaintiff's proposed accommodation of "solely work[ing] remotely would

11

impose an undue hardship on [defendant] because [defendant] was not able to bill for [plaintiff's] remote services").

## II.     Plaintiff Has Failed to Show Defendant Violated GINA

Plaintiff has failed to show that GINA prohibits either Defendant's requests that Plaintiff show proof of having received a COVID-19 vaccine or tests or Defendant's questions about her family's history of medical treatment.  "GINA makes it unlawful for an employer to discharge or otherwise discriminate against an employee based on genetic information or testing."  *Powell v. Lab Corp.*, 789 F. App'x 237, 240 (2d Cir. 2019) (citing 42 U.S.C. § 2000ff-1(a)(1)) (affirming dismissal of *pro se* plaintiff's GINA claims for failure to state a claim).  "The Act defines 'genetic information' to include: (1) an employee's genetic tests; (2) the genetic tests of the employee's family members; or (3) the manifestation of a disease or disorder in the employee's family members."  *Perry v. John A. Guerrieri, DDS PLLC*, 518 F. Supp. 3d 665, 676 (W.D.N.Y. 2021) (granting summary judgment dismissing GINA claims for failure to state a claim); *Guan v. New York State Dep't of Env't Conservation*, No. 16-cv-2180, 2019 WL 1284260, at *6 (E.D.N.Y. Mar. 20, 2019) (describing same definition of "genetic information" and granting motion to dismiss *pro se* plaintiff's GINA claim).  "To establish a claim for genetic discrimination under GINA, plaintiff must plead and prove (1) that she was an employee; (2) who was discharged or deprived of employment opportunities; (3) because of information from her genetic tests."  *Perry*, 518 F. Supp. 3d at 676–77; *Guan*, 2019 WL 1284260, at *6 (describing same elements of GINA claim).

Asking whether a person or their family members have received a vaccine—as opposed to asking whether they have had a particular disease—is not a request for genetic information. *Rides v. City of Chicago*, No. 22-cv-2740, 2023 WL 6126726, at *2–3 (N.D. Ill. Sept. 19, 2023) (holding that city's request that employee disclose whether he had received a COVID-19 vaccine

did not violate GINA); *Harden v. Honeywell Int'l, Inc.*, No. 23-cv-176, 2023 WL 3310172, at *4 (N.D. Ga. May 8, 2023) (dismissing GINA claim based on COVID-19 vaccination requirement because plaintiff failed to show that his "vaccination status meets th[e] statutory definition of genetic information").  Therefore, Defendant did not violate GINA by requesting that Plaintiff, as required by state law, show proof of having received a COVID-19 vaccine or by asking whether Plaintiff or her family had previously received other vaccines or medical treatment.  Nor did Defendant violate GINA when it asked Plaintiff about her views on certain medical procedures.

Defendant's request that Plaintiff receive periodic COVID-19 tests also did not violate GINA because multiple courts have held that tests for COVID-19 do not analyze genetic information and, therefore, do not "qualify as genetic tests under GINA."  *McKinley v. Princeton Univ.*, No. 22-cv-5069, 2023 WL 3168026, at *3 (D.N.J. Apr. 28, 2023) (granting motion to dismiss plaintiff's GINA claim against employer); *Taylor v. Vanderbilt Univ.*, No. 22-cv-465, 2023 WL 2398761, at *8 (M.D. Tenn. Jan. 23, 2023), *report and recommendation adopted in full*, 2023 WL 2390678 (M.D. Tenn. Mar. 7, 2023) (granting motion to dismiss plaintiff's GINA claim because she did not allege facts suggesting that employer used COVID-19 tests to obtain genetic information).  Plaintiff has presented no evidence that would permit the Court or a jury to infer that Defendant was using COVID-19 tests to collect her genetic information.

### III.   The Court Declines to Exercise Supplemental Jurisdiction Over Any State Law Claims

Plaintiff's brief in opposition to Defendant's motion for summary judgment asserts on multiple occasions that Defendant, by placing her on leave without pay, violated Section 3020-a of New York's Education Law, which provides certain procedural protections for tenured education personnel.  ECF No. 22 at 9–11.  Plaintiff's complaint does not include a claim

pursuant to that law.  ECF No. 1.  Nevertheless, the Court has interpreted Plaintiff's papers

liberally in deference to her *pro se* status and deems her to be attempting to assert a claim under

Section 3020-a.  That claim would be based solely on state law, and the Court declines to

exercise supplemental jurisdiction over it because the Court has dismissed all of Plaintiff's

federal law claims.

       The Second Circuit has held that the procedural protections in Section 3020-a of New

York's Education Law "exceed th[e] standard" required by the Fourteenth Amendment's Due

Process Clause, and so a tenured school employee's allegation that her employer violated Section

3020-a "does not amount to a federal constitutional due process violation."  *Green v. Dep't of

Educ. of the City of New York*, 16 F.4th 1070, 1077 (2d Cir. 2021).  To the extent Plaintiff wants

to assert a claim under Section 3020-a, that is a purely state law claim.  But the Court may not

exercise diversity jurisdiction over that claim, pursuant to 28 U.S.C. § 1332, because Plaintiff is

a New York citizen suing a New York school district, which means there is not diversity of

citizenship between the parties.  *See* ECF No. 1 at 2.

       The Court could exercise supplemental jurisdiction over a Section 3020-a claim.  Subject

to certain exceptions not applicable here, "in any civil action of which the district courts have

original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims

that are so related to claims in the action within such original jurisdiction that they form part of

the same case or controversy under Article III of the United States Constitution."  28 U.S.C.

§ 1367(a).  However, the Court is not required to exercise supplemental jurisdiction whenever it

is available.  A court "may decline to exercise supplemental jurisdiction" under various different

circumstances, including when it "has dismissed all claims over which it has original

jurisdiction."  28 U.S.C. § 1367(c)(3).  Ordinarily, a court's resolution of all the claims over

which it has original jurisdiction before trial "generally points to declining to exercise

supplemental jurisdiction" over any remaining claims.  *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018).

Applying that principle favoring dismissal makes sense here.  The parties' briefs do not meaningfully address the merits of any claim that Plaintiff might assert under Section 3020-a, and since Plaintiff did not expressly allege such a claim in her complaint, the Court expects that the parties did not focus their discovery efforts on exploring that potential claim.  Therefore, it would be no more efficient for the parties to litigate a Section 3020-a claim in this Court than it would be for Plaintiff to file such a claim in state court.  Declining to exercise supplemental jurisdiction, and dismissing Plaintiff's Section 3020-a claim without prejudice to Plaintiff asserting that claim in state court, is therefore proper.  *See Powell v. New York State Dep't of Educ.*, No. 18-cv-7022, 2022 WL 900605, at *13–14 (E.D.N.Y. Mar. 28, 2022) (declining to exercise supplemental jurisdiction over state law claims after dismissing plaintiff's federal claims, which included a "challenge to the constitutionality of Section 3020-a"); *Green v. Dep't of Educ. of the City of New York*, No. 18-cv-10817, 2019 WL 3432306, at *11–12 (S.D.N.Y. July 31, 2019), *report and recommendation adopted in full*, 2019 WL 4622077 (S.D.N.Y. Sept. 23, 2019), *aff'd*, 16 F.4th 1070 (2d Cir. 2021) (declining to exercise supplemental jurisdiction over plaintiff's claim "for defendants' alleged failure to comply with N.Y. Educ. Law § 3020-a").

## **CONCLUSION**

For the reasons set forth above, the Court GRANTS in full Defendant's motion for summary judgment, *see* ECF No. 19, and dismisses all of Plaintiff's federal law claims with prejudice.  The Court declines to exercise supplemental jurisdiction over, and dismisses without prejudice, any claims that Defendant violated any state law, such as Section 3020-a of New York's Education Law.  The Clerk of Court is respectfully directed to enter judgment in favor of

15

Defendant and to close this case.  The Court's staff will mail Plaintiff a copy of this order, the

forthcoming judgment, and copies of the unpublished decisions referenced in this order, in

accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

     SO ORDERED.

                                  */s/ Hector Gonzalez*          
                                 HECTOR GONZALEZ
                                 United States District Judge

Dated: Brooklyn, New York
       January 12, 2024